```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/17/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RENE ALVARADO MEJIA, and all others similarly situated,

                             Plaintiff,

   -against-

COUNTY OF ROCKLAND, DONNA G. SIBERMAN, in her official capacity as County Clerk of Rockland County, THE ROCKLAND COUNTY DISTRICT ATTORNEY'S OFFICE, THOMAS E. WALSH II, in his official capacity as Rockland County District Attorney, THE NEW YORK UNIFIED COURT SYSTEM, and JOHN and JANE DOE in their individual capacities,

                             Defendants.

No. 23-CV-492 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Rene Alvarado Mejia ("Plaintiff"), on behalf of himself and all others similarly situated, brings this putative class action pursuant to 42 U.S.C. § 1983 against Defendants County of Rockland; the Rockland County District Attorney's Office; Donna G. Silberman, in her official capacity as County Clerk of Rockland County; Thomas E. Walsh II, in his official capacity as Rockland County District Attorney; and John and Jane Doe in their individual capacities (collectively, the "Defendants").[1] Plaintiff asserts claims arising from Defendants' alleged violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, the Privileges and Immunities Clause of the U.S. Constitution, Title VI of the Civil Rights Act of 1964,

---

[1] Plaintiff initially asserted claims against the New York Unified Court System. (*See* ECF No. 8.) However, on May 13, 2024, the Court dismissed all claims asserted against the New York Unified Court System without prejudice. (*See* ECF No. 29.) Plaintiff has not repleaded or otherwise renewed these claims.

and New York State Executive Law § 296 *et seq.*, based on Defendants' alleged denial of admitting Plaintiff into the Rockland County Drug Court due to his lack of English proficiency.

Presently before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 45.) For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

Plaintiff and Defendants submitted briefs, statements of material facts pursuant to Local Rule 56.1, responses to the opposing statements of material facts, and the record and exhibits from discovery in the instant proceeding, which reflect the following factual background.

### I. Plaintiff's Arrest and the Rockland County Drug Court

Plaintiff Rene Alvarado Mejia was arrested on March 6, 2022, and charged with driving while intoxicated. (ECF No. 50, Ex. 2, "Pl. Counter 56.1," ¶ 8.) Plaintiff was thereby scheduled for a court appearance in the Suffern Village Court on May 3, 2022, where he was initially represented by a public defender. (ECF No. 50, Ex. 1, "Pl. Opp.," at 3.) Although the exact timeframe is unclear from the record, it appears that Plaintiff pled guilty. (Pl. Counter 56.1 ¶ 20.) Plaintiff subsequently retained private counsel, Stuart Altman, to represent him. (ECF No. 50, Ex. 3, "Altman Aff.," ¶¶ 3–4.) Shortly thereafter, Plaintiff decided that he wished to be admitted into the Rockland County Drug Court (the "Drug Court"). (*Id.* ¶ 4.)

In criminal cases involving substance abuse, including alcohol-related offenses, the Rockland County District Attorney offers the Drug Court as an alternative to traditional prosecution. (ECF No. 48, "Defs. 56.1," ¶ 2.) The Drug Court's purpose is to "divert appropriate cases of individuals suffering from substance abuse, and offer substance abuse treatment, possibly mental health treatment, and ancillary services as well." (*Id.* ¶ 3.) Participation in the Drug Court

2

may lead to "charges [being] reduced or dismissed upon successful completion of treatment and other court requirements." (*Id*. ¶ 5.) Prior to 2024, the Rockland District Attorney ("Rockland DA") evaluated individual cases to determine whether they were appropriate for diversion into the Drug Court. (*Id*. ¶ 6.)

## II. Plaintiff's Attempts to Gain Admission into the Rockland County Drug Court

Mr. Altman first requested that Plaintiff be admitted into the Drug Court on July 12, 2022, during an appearance before the Suffern Village Court. (ECF No. 50, "Vasquez Aff.," Ex. 4 at COR000001.) As relevant here, Plaintiff is an immigrant from Guatemala who does not speak or understand English. (Defs. 56.1 ¶¶ 11–12.) Despite Plaintiff's lack of proficiency in English, the presiding judge indicated support for Plaintiff's admission into the Drug Court and stated on the record that he thought the Drug Court should accept Spanish-speaking individuals. (Vasquez Aff., Ex. 4 at COR000001.) Mr. Altman also informed the Suffern Village Court that Plaintiff would supply his own Spanish interpreter. (*Id*.) Shortly thereafter, Mr. Altman contacted the Drug Court requesting that Plaintiff be admitted into the program. (Altman Aff. ¶ 5.) However, Plaintiff alleges that Mr. Altman was informed by an unidentified individual that Plaintiff was ineligible for the Drug Court because he could not speak or understand English. (*Id*.)

Two weeks later, on July 29, 2022, Mr. Altman submitted a formal written request to the Drug Court seeking Plaintiff's admission. (ECF No. 8, "FAC," Ex. 1.) Mr. Altman's letter explained that Plaintiff was granted Special Immigrant Juvenile Status ("SIJS") by the Rockland Family Court and would soon be applying for lawful permanent residence. (*Id*.) Mr. Altman further emphasized that Plaintiff's participation in the Drug Court would help him avoid adverse immigration consequences. (*Id*.) He also reiterated that Plaintiff was willing to provide his own Spanish interpreter for all court appearances and treatment sessions. (*Id*.) Nevertheless, Plaintiff's

3

application to the Drug Court was denied four times between July 2022 and January 2023. (Altman Aff. ¶ 10.) Plaintiff alleges that the delay in his admission to the Drug Court caused him significant distress, particularly with respect to his immigration status. (*Id*. ¶¶ 11, 18.) Plaintiff was also purportedly unable to access benefits ordinarily available to individuals with SIJS, such as a lawful permanent resident card. (*Id*. ¶ 3.) Due to the persistent denial of his admission into the Drug Court, Plaintiff commenced this putative class action on January 20, 2023. (ECF No. 1.)

During the course of litigation, on or around February 7, 2023, the Rockland County Department of Law contacted Defendant Walsh, the Rockland DA, "concerning the alleged failure to provide equivalent treatment for Spanish speaking individuals who are in the category of Limited English Proficient ("LEP") in Misdemeanor Drug Court." (Vasquez Aff., Ex. 4 at COR000006.) In his response, dated March 14, 2023, Defendant Walsh explained that the "sole issue" in not admitting Plaintiff into the Drug Court was the difficulty of "provid[ing] equal drug/alcohol treatment services to those defendants who have No English Proficiency ("NEP")." (*Id*.)

### III.   Drug Court Reforms and Plaintiff's Subsequent Admission

Beginning in 2024, the New York State Office of Court Administration ("OCA") began reforming the Drug Court. (ECF No. 49, "Chafizadeh Decl.," Ex. F.) The purpose of this reform was to ensure that "the Rockland County Drug Treatment Court… [was in compliance] with Title VI of the Civil Rights Act of 1964," where "[p]rohibited discrimination may include a failure to provide meaningful language access." (*Id*. at 1.) OCA first "assumed responsibility for the [Drug] Court in March 2024… to ensure that all LEP individuals qualified to participate in the Drug Treatment Court had meaningful access to language." (*Id*. at 2.) OCA subsequently entered into an agreement with the U.S. Department of Justice, which provides that OCA shall supply

4

additional state-funded translators in Spanish, Creole, and Yiddish, ensure the availability of documents in those languages, and provide personnel training. (Chafizadeh Decl., Ex. G at 1–3.) OCA and the Rockland County District Attorney's Office ("Rockland DA's Office") also formalized an amended Policies and Procedures Manual for the Drug Court that covers, among other things, non-discrimination based on language. (Chafizadeh Decl., Ex. B at 10.)

In July 2024, the U.S. Department of Justice contacted Mr. Altman, informing him that Plaintiff should no longer be barred from admission into the Drug Court. (Altman Aff. ¶ 16.) On July 10, 2024, Mr. Altman contacted the Suffern Village Court to once again request Plaintiff's admission into the Drug Court. (Vasquez Aff., Ex. 4 at COR000009.) Plaintiff was finally admitted into the Drug Court on or about October 16, 2024. (Chafizadeh Dec., Ex. H at 2.) A review of Plaintiff's criminal record indicates, however, that Plaintiff tested positive for alcohol after his admission into the Drug Court. (*Id*.) Plaintiff also failed to appear in the Drug Court on October 17, 2024, and was subsequently arrested on November 26, 2024. (*Id*.) Plaintiff was nevertheless readmitted into the program. (Altman Aff. ¶ 19.)

## PROCEDURAL HISTORY

Plaintiff commenced this putative class action against Defendants on January 20, 2023. (ECF No. 1.) On July 7, 2025, Defendants filed for summary judgment along with a memorandum of law in support and Rule 56.1 statement of undisputed material facts. (ECF Nos. 45–48.) Plaintiff opposed the motion and submitted a counterstatement to Defendants' Rule 56.1 statement of undisputed material facts. (ECF No. 50.) Defendants filed a reply memorandum in further support of their motion. (ECF No. 51). To date, Plaintiff has not yet moved to certify the class.

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, inclusive of deposition testimony, documents, affidavits, and declarations, *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing… that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus then shifts to the nonmoving party to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Courts must "draw all rational inferences in the non-movant's favor" while reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248). Importantly, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (noting that "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment"). Rather, in answering the primary inquiry of "whether there is the need for a trial," the court must determine "whether a fair-minded jury *could* return a verdict for the plaintiff [or non-moving party] on the evidence presented." *Anderson*, 477 U.S. at 250, 252. Summary judgment

should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## DISCUSSION

Defendants move for summary judgment on the grounds that (1) Plaintiff lacks standing and his claims are moot due to his admission into the Drug Court; (2) Plaintiff failed to certify the putative class before dismissal of his individual claims; and (3) Plaintiff's claims against the individual Defendants being sued in their official capacity are duplicative as those asserted against the municipal Defendants. (ECF No. 46, "Defs. Mot.," at 1–2, 7–8.) In the event the Court dismisses any of Plaintiff's claims, Plaintiff argues that the Court should postpone a decision on the pending motion pursuant to Federal Rule of Civil Procedure 56(d). (Pl. Opp. at 18.) The Court now address each claim in turn.

### I. Threshold Matters

#### a. Claims Asserted Against the Rockland DA's Office

As a threshold matter, the Court must consider whether Plaintiff may sue the Rockland DA's Office. A plaintiff's capacity to sue a district attorney's office is determined by state law. Fed. R. Civ. P. 17(b). "Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002). Courts have routinely applied this rule to conclude that "the District Attorney's Office is not a suable entity." *Woodward v. Office of Dist. Att'y*, 689 F. Supp. 2d 655, 658 (S.D.N.Y. 2010); *Harris v. Tioga Cnty.*, 663 F. Supp. 3d 212, 233 (N.D.N.Y. 2023), *appeal dismissed*, 2024 WL 4179651 (2d Cir. Sept. 13, 2024); *Ayers v. Suffolk Cnty. Dist. Att'y Off.*, 2022 WL 4539580, at *3 (E.D.N.Y.

7

Sept. 28, 2022). Given that Plaintiff is already suing Rockland County, summary judgment is warranted as to all claims asserted against the Rockland DA's Office.

### b. Claims Asserted Against Defendants Siberman and Walsh

The Court must next consider whether Plaintiff can sue Defendants Siberman and Walsh in their official capacity while also suing Rockland County. It is well established that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent[.]" *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 n.55 (1978). It is also established in the Second Circuit that "a § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." *Kanderskaya v. City of New York*, 11 F. Supp. 3d 431, 435 (S.D.N.Y. 2014), *aff'd*, 590 F. App'x 112 (2d Cir. 2015) (quoting *Coon v. Town of Springfield, Vt.,* 404 F.3d 683, 687 (2d Cir. 2005)). Indeed, when a plaintiff alleges "official-capacity claims against… supervisory defendants… [they] are unnecessary because such claims duplicate the claims against the City[.]" *Holden v. City*, 2024 WL 218438, at *2 (S.D.N.Y. Jan. 19, 2024).

Here, Plaintiff sues Defendants Silberman and Walsh solely in their official capacities, not in their individual capacities. (FAC ¶¶ 12, 19.) Plaintiff also brings the same claims against Rockland County. (*Id.* ¶ 11.) As a result, Plaintiff's claims against Defendants Silberman and Walsh are redundant because they are duplicative of the claims asserted against Rockland County. *See Kanderskaya*, 11 F. Supp. 3d at 435 (dismissing claims against a municipal officer in the officer's official capacity as redundant and duplicative); *Davis v. Stratton*, 360 Fed. Appx. 182, 183 (2d Cir. 2010) ("The suit against the mayor and police chief in their official capacities is essentially a suit against the City[], because in a suit against a public entity, naming officials of the public entity in their official capacities add[s] nothing to the suit."); *Phillips v. Cnty. of Orange*,

894 F. Supp. 2d 345, 385 n.35 (S.D.N.Y. 2012) ("to the extent the Individual Defendants have been sued in their official capacities, these suits should be dismissed, because the municipal entities are the real parties in interest").  The Court thereby grants summary judgment as to all claims asserted against Defendants Silberman and Walsh.

## II. Individual Claims

### a. Standing

Defendants contend that summary judgment is appropriate because Plaintiff's admission into the Drug Court eliminates standing, as he no longer suffers an injury that could be remedied by a favorable judicial decision.  (Defs. Mot. at 4.)

Article III limits federal judicial power to the resolution of "Cases" and "Controversies." U.S. Const. art. III, § 2.  To satisfy this jurisdictional requirement, "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Jewish People for the Betterment of Westhampton Beach v. Vill. of Westhampton Beach*, 778 F.3d 390, 394 (2d Cir. 2015) (quoting *Cooper v. USPS*, 577 F.3d 479, 489 (2d Cir. 2009)).  For each form of relief sought, a plaintiff "must demonstrate standing separately." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)).

A plaintiff seeking injunctive relief lacks standing where "they are unable to establish a real or immediate threat of injury." *Gunn v. Malani*, 2023 WL 2664805, at *10 (S.D.N.Y. Mar. 28, 2023).  "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that [he] is likely to be harmed again in the future in a similar way." *Id*. (citing *Nicosia*, 834 F.3d at 239); *see also*

9

*Kelly v. N.Y. State Civ. Serv. Comm'n*, 2015 WL 861744, at *4 n.4 (S.D.N.Y. Jan. 26, 2015) (same). A plaintiff similarly "seeking… declaratory relief cannot rely on [a] past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *See Louis v. Morley*, 2024 WL 4573677, at *3 (S.D.N.Y. Oct. 24, 2024) (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)).

Notable here, Plaintiff seeks three forms of relief—declaratory, injunctive, and monetary damages—which are based on Defendants' alleged denial of admitting him into the Drug Court. (FAC ¶¶ 120–28; Pl. Opp. at 8.)  For instance, Plaintiff requests that the Court (1) declare that Defendants violated multiple laws by allegedly discriminating against Spanish-speaking LEP individuals; (2) order Defendants to ensure that Spanish-speaking LEP individuals have meaningful access to the Drug Court; and (3) award Plaintiff damages. (FAC ¶¶ 123–26.)  Since commencing this action, however, the U.S. Department of Justice and OCA reformed the Drug Court.  (*See* Chafizadeh Decl., Exs. F–G.)  As part of this reformation, the Drug Court now provides additional state-funded translators in Spanish and amended its policies to ensure non-discrimination based on language. (*See* Chafizadeh Decl., Ex. B at 10; Ex. G at 1–3).  As a result, Plaintiff was admitted into the Drug Court on October 16, 2024.  (Chafizadeh Dec., Ex. H at 2.)  Indeed, Plaintiff's immigration and criminal counsel agrees that, aside from a brief lapse at the outset, Plaintiff "has been thriving" since being admitted to the Drug Court. (Altman Aff. ¶ 19.) While the Court does not minimize Plaintiff's distress regarding his immigration status resulting from the delay in his admission to the program (*see* Altman Aff. ¶¶ 11, 18), a claim for declaratory or injunctive relief cannot rest solely on past injuries.  *See Louis*, 2024 WL 4573677, at *3.  A review of the record does not indicate that Plaintiff will be barred from future participation in the Drug Court based on his lack of English proficiency, particularly considering the reforms

implemented by the U.S. Department of Justice and OCA. Consequently, the Court finds that Plaintiff lacks standing to seek declaratory and injunctive relief in this action.

The Court's conclusion, however, does not necessarily mean that Plaintiff lacks standing to seek monetary damages. While Plaintiff's past injuries do not confer standing to seek declaratory or injunctive relief, "past injuries may provide a basis for standing to seek money damages." *Gunn*, 2023 WL 2664805, at *10. As referenced above, Defendants alleged denial of admitting Plaintiff into the Drug Court resulted in Plaintiff being unable to access benefits ordinarily available to individuals with SIJS, such as a lawful permanent resident card. (Altman Aff. ¶¶ 3, 11.) Mr. Altman also affirms that Plaintiff's denial from the program took a significant toll on his mental health and well-being. (*Id*. ¶ 18.) The Court concludes that, at least for purposes of establishing standing, Plaintiff's evidence is sufficient to confer standing to seek monetary damages. *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 280 (2021) ("A request for nominal damages satisfies the redressability element necessary for Article III standing where a plaintiff's claim is based on a completed violation of a legal right."); *Clementine Co., LLC v. Adams*, 74 F.4th 77, 82 (2d Cir. 2023) (noting that a plaintiff may pursue nominal-damages claims under § 1983 notwithstanding the dismissal of accompanying declaratory and injunctive claims as moot due to policy changes).

### b. Mootness

Echoing their earlier argument, Defendants also contend that summary judgment is warranted because Plaintiff's claims have become moot after his admission into the Drug Court. (Defs. Mot. at 4–5.)

The mootness doctrine holds that "[i]n general, a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Comer v.*

*Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994) (cleaned up); *see also County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Powell v. McCormack*, 395 U.S. 486, 496 (1969). The mootness doctrine "ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit, including the pendency of [an] appeal." *Cook v. Colgate University*, 992 F.2d 17, 19 (2d Cir. 1993) (citation omitted). When, as here, a plaintiff seeks prospective relief against a municipal official, the claim is moot if the plaintiff's injury is not "continuing." *See Sudler v. City of New York*, 689 F.3d 159, 177–78 (2d Cir. 2012).

A claim is similarly deemed moot when a defendant voluntarily discontinues the challenged conduct. *Deide v. Day*, 2024 WL 3471294, at *3 (S.D.N.Y. July 19, 2024). Under the voluntary cessation doctrine, courts will deem a claim moot after a defendant voluntarily discontinues the challenged conduct if "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id*. (quoting *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109 (2d Cir. 2016)). However, as the Second Circuit has recognized, "[t]he mootness doctrine is riddled with exceptions." *Comer*, 37 F.3d at 798. One such exception, as Plaintiff contends, arises when a defendant ceases the allegedly unlawful activity, but the conduct is "capable of repetition, yet evading review." *Deide*, 2024 WL 3471294, at *4. That doctrine is limited to exceptional situations where "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id*. (citing *Haley v. Pataki*, 60 F.3d 137, 141 (2d Cir. 1995)).

As discussed above, the Court has already determined that Plaintiff lacks standing to seek declaratory and injunctive relief in this action and similarly finds that such relief is now moot.

12

Plaintiff has no cognizable interest in declaratory or injunctive relief because he is currently participating in the Drug Court. (Chafizadeh Dec., Ex. H at 2.) To conclude that Plaintiff's declaratory and injunctive relief claims are not moot, the Court "would have to assume" that he might, for some reason, be barred from future participation in the Drug Court. *See Uviles v. City of New York*, 673 F. Supp. 3d 225, 231 (E.D.N.Y. 2023), *aff'd*, 130 F.4th 27 (2d Cir. 2025); *Louis*, 2024 WL 4573677, at *3. Such speculation is insufficient to preserve those claims, given that the U.S. Department of Justice and OCA intervened to reform the Drug Court. (Chafizadeh Decl., Exs. F; G at 1–3.) Plaintiff's own evidence also confirms that he is currently admitted and is successfully participating in the program. (Altman Aff. ¶ 19.) Not even Plaintiff's relapse prevented him from rejoining the program. (Chafizadeh Dec., Ex. H at 2.)

The Court is similarly persuaded that the "capable of repetition, yet evading review" exception to the mootness doctrine does not apply here. Plaintiff provides no evidence to demonstrate that Defendants are somehow evading review by granting him admission into the Drug Court. To the contrary, the U.S. Department of Justice and OCA intervened and amended the policies of the Drug Court, ensuring that individuals would no longer be barred from participating based on a lack of English proficiency—demonstrating that Defendants on their own cannot simply reamend these policies. (Chafizadeh Decl., Exs. F; G at 1–3.) Plaintiff even concedes that it was the U.S. Department of Justice who informed Mr. Altman that Plaintiff will no longer have an issue being admitted into the Drug Court. (Pl. Opp. at 14.) "Since the repetition of the events giving rise to the [declaratory and injunctive relief] is entirely speculative, the mere 'theoretical possibility' that this scenario will arise again is not sufficient for the capable-of-repetition exception to apply." *Deide*, 2024 WL 3471294, at *4 (quoting *Haley*, 60 F.3d at 141).

13

However, the mootness of Plaintiff's declaratory and injunctive claims does not moot his claims for monetary damages. "[S]o long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case." *Marin v. Town of Se.*, 136 F. Supp. 3d 548, 562 (S.D.N.Y. 2015) (quoting *Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res.*, 532 U.S. 598, 608–09 (2001)); *see also Van Wie v. Pataki,* 267 F.3d 109, 115 n.4 (2d Cir. 2001) (noting that a claim for damages, even nominal in nature, prevents mootness); *Stokes v. Village of Wurtsboro,* 818 F.2d 4, 6 (2d Cir. 1987) ("Claims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable."). For the same reasons identified in the Court's standing analysis, Plaintiff has submitted evidence demonstrating that he suffered harm due to the delay in his admission to the Drug Court. (Altman Aff. ¶¶ 3, 11, 18.) While this Court has concluded "that any claims for injunctive and declaratory relief… are moot, the court finds itself compelled to allow these claims to survive insofar as they seek… damages for the violation of substantive constitutional rights." *Alive v. Hauppauge Sch. Dist.*, 2009 WL 959658, at *5 (E.D.N.Y. Apr. 6, 2009). Consequently, the Court grants Defendants' motion for summary judgment as to Plaintiff's claims for prospective relief on mootness grounds and denies the motion as to Plaintiff's claims for monetary damages.

### III.   Putative Class Action Claims

Defendants next argue that summary judgment is warranted as to the putative class claims because (1) Plaintiff has not moved for class certification and (2) the underlying claims for prospective relief are moot. (Defs. Mot. 7; ECF No. 51, "Defs. Reply," 4–5.)

The Court has already concluded that Plaintiff's claims for declaratory and injunctive relief are moot, whereas the claims for monetary damages remain actionable. However, several exceptions to the mootness doctrine exist in the class action context. *See Uviles*, 673 F. Supp. 3d

at 231 (citing *Bd. of Sch. Commis. of Indianapolis v. Jacobs*, 420 U.S. 128, 129 (1975)). Notable here, the Second Circuit recently affirmed a district court's decision not "to further expand the class action exception to mootness to include cases where the plaintiff has not even moved for class certification." *Uviles*, 673 F. Supp. 3d at 233, *aff'd*, 130 F.4th 27 (2d Cir. 2025). This conclusion was partially reached because that "case has been pending going on four years, and no firm schedule for moving for class certification has been set." *Id*. at 234. As of this date, the instant proceeding has been pending for almost three years, having been initiated on January 20, 2023 (*see* ECF No. 1), and Plaintiff has not yet moved to certify the putative class.

One of Plaintiff's arguments on why he hasn't moved to certify the putative class is because Defendants have withheld discovery. (Pl. Opp. at 20.) Notwithstanding the Second Circuit's hesitation to extend the class action exception to mootness to include cases where the plaintiff has not yet moved for class certification, *see Uviles*, 673 F. Supp. 3d at 233–34, the Court is not convinced that further discovery will save Plaintiff's—and any putative class members'—claims seeking prospective relief from being rendered moot, as the U.S. Department of Justice and OCA reformed the Drug Court. (Chafizadeh Decl., Exs. F; G at 1–3.) "Mootness goes to the court's subject matter jurisdiction… the most important threshold issue that federal courts face. Subject matter jurisdiction cannot be infinitely expandable by judicial pronouncement." *Uviles*, 673 F. Supp. 3d at 233 (citing *DeFunis v. Odegaard*, 416 U.S. 312, 319–20 (1974)). The Court therefore finds that summary judgment is warranted with respect to the putative classes' claims seeking declaratory and injunctive relief.

### IV.    Federal Rule of Civil Procedure 56(d)

Finally, Plaintiff asserts that the Court should postpone rendering a decision on certain issues until relevant discovery has been completed. (Pl. Opp. at 18.) As the Court has already

15

determined that Plaintiff's prospective relief claims lack standing and are moot, the Court only reviews whether more discovery is warranted concerning Plaintiff's claims seeking monetary damages.

To resist summary judgment on the ground of Federal Rule of Civil Procedure 56(d), "the nonmoving party must submit an affidavit or declaration explaining what discovery he needs, and how such discovery will create a triable issue of fact." *Calltrol Corp. v. Loxysoft AB*, 2023 WL 2529844, at *8 (S.D.N.Y. Mar. 15, 2023) (citing Fed. R. Civ. P. 56(d)). The nonmoving party must also specify the efforts the affiant has undertaken to obtain the requested discovery and explain why those efforts were unsuccessful. *See Busher v. Barry*, 2016 WL 1249612, at *4 (S.D.N.Y. Mar. 28, 2016) (citing *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)); *see also Young v. Benjamin Dev. Inc.*, 395 Fed. App'x. 721, 722–23 (2d Cir. Oct. 5, 2010) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.") The nonmoving party must similarly "show how the facts sought are reasonably expected to create a genuine issue of material fact." *Crandall v. David*, 457 F. App'x 56, 58 (2d Cir. 2012) (quoting *Paddington*, 34 F.3d at 1137–38).

To support his Rule 56(d) argument, Plaintiff submits the Vasquez Affirmation, which asserts, among other things, that Defendants have withheld relevant discovery and failed to provide a privilege log. (Vasquez Aff. ¶¶ 5–9.) Although Defendants respond by arguing that further discovery will not aid Plaintiff's moot claims—which the Court agrees—they do not respond to Plaintiff's assertions that they have withheld discovery. (Defs. Reply at 7.) But "the trial court may properly deny further discovery under Rule 56(d) if the nonmoving party has had a fully adequate opportunity for discovery." *Moccia v. Saul*, 820 F. App'x 69, 70 (2d Cir. 2020) (summary order) (quoting *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir.

16

1989)). Similarly, "[r]elief under Rule 56(d) is not available when summary judgment motions are made after the close of discovery." *Turner v. McDonough*, 2021 WL 965626, at *2 (S.D.N.Y. Mar. 15, 2021) (quoting *Capitol Recs., Inc. v. MP3tunes, LLC*, 2013 WL 1987225, at *8 (S.D.N.Y. May 14, 2013)).

A review of the docket reflects that Plaintiff had ample time and opportunity to pursue discovery. Fact discovery began around June 2024 and was extended and ultimately closed on October 4, 2025. (ECF No. 36; Minute Entry dated Sept. 23, 2024.) The parties also submitted an amended case management plan providing that all discovery was to be completed by January 10, 2025. (ECF No. 36.) Defendants thereby filed their motion for summary judgment on July 7, 2025—several months after the close of discovery. (ECF No. 45.) The Court does not condone any failure by Defendants to produce relevant discovery within their possession. Nevertheless, the docket shows that Plaintiff did not seek relief during the discovery period to obtain the materials he now claims were withheld, including by filing a motion to compel. Under these circumstances, the Court concludes that it would be inappropriate to defer consideration of the motion for summary judgment or to reopen discovery at this stage. *See Moccia*, 820 F. App'x at 70 (affirming district court's denial of plaintiff's Rule 56(d) request because "[t]he district court here observed that [plaintiff's] Rule 56(d) request was filed months after the close of discovery"); *Espada v. Schneider*, 522 F.Supp.2d 544, 549 (S.D.N.Y. 2007) (relief under Rule 56(d) "is not available when summary judgment motions are made after the close of discovery").

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part. The Court GRANTS Defendants summary judgment with respect to Plaintiff's putative class action and individual claims seeking declaratory and injunctive relief.

The Court similarly GRANTS Defendants summary judgment and dismisses all claims asserted against the Rockland County District Attorney's Office, Donna G. Silberman, and Thomas E. Walsh II. The Clerk of Court is respectfully directed to terminate the Rockland County District Attorney's Office, Donna G. Silberman, and Thomas E. Walsh II from this action and to terminate the motion at ECF No. 45. Defendants' motion for summary judgment is DENIED in all other respects.

A telephonic Pretrial Conference is scheduled for February 25, 2026 at 11:00 am. To access the teleconference, please follow these directions: (1) Dial the Meeting Number: (855) 244-8681; (2) Enter the Access Code: 2310 494 3855; and (3) Press pound (#) to enter the teleconference.

SO ORDERED,

Dated: December 17, 2025
    White Plains, NY

_____
Nelson S. Román, U.S.D.J.